IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kevin Wayne McDaniels, | ) | C/A No.: 1:09-1732-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Jon Ozmint Dir. of S.C. Dept. of | ) | |
| Corrections; Samuel B. Glover, Dir. of | ) | |
| S.C. Dept. of PPPS; Dr. Beiner, Director | ) | |
| of SCDC Health Services; Anderson & | ) | |
| Shaw Hardwood Flooring, Inc.; John | ) | |
| Carson, P.I. Business Mgr.; sued in their | ) | |
| individual and official capacity; Leon | ) | REPORT AND RECOMMENDATION |
| Lott, Sheriff of Richland County; Alvin | ) | |
| S. Glenn Detention Ctr. Director; B.J. | ) | |
| Mackey, Warden at Kirkland Reception | ) | |
| Ctr.; Monica Counts, Classification | ) | |
| Supervisor at Tyger River Corr. Inst.; | ) | |
| Roger Rabb, Classification Supervisor at | ) | |
| Tyger River Corr. Inst.; Tim Riley, | ) | |
| Warden at Tyger River Corr. Inst.; Laura | ) | |
| Caldwell, Associate Warden at Tyger | ) | |
| River Corr. Inst.; Gary Lane, Associate | ) | |
| Warden at Tyger River Corr. Inst.; | ) | |
| Donald Lane, Investigator at Tyger River | ) | |
| Correctional Inst., sued in their | ) | |
| individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Kevin Wayne McDaniels filed this pro se civil rights action pursuant to

42 U.S.C. § 1983. At the time of the events alleged in the complaint, Plaintiff was an

inmate housed at Tyger River Correctional Institution ("TRCI") in the custody of the

South Carolina Department of Corrections ("SCDC"). Plaintiff has since been transferred

to the custody of the Federal Bureau of Prisons ("BOP").

Currently before the court are the following motions: (1) Beinor's[1] Motion for Summary Judgment [Entry #152]; (2) Plaintiff's Motion for Copies of Documents [Entry #154]; (3) Plaintiff's Motion for a Private Investigator [Entry #155]; (4) Defendants Glover, Ozmint, Carson, McKie, Wallace, Rabb, Riley, Caldwell, Gary Lane, and Donald Lane's Motion for Summary Judgment [Entry #160]; (5) Defendant Lott's Motion for Summary Judgment [Entry #161]; (6) the Director of the Alvin S. Glenn Detention Center's Motion for Summary Judgment [Entry #162]; (7) Plaintiff's Motion for Contempt [Entry #206]; (8) Plaintiff's Motion for Return of Property [Entry #208]; (9) Plaintiff's Motion for Damages [Entry #209]; (10) Plaintiff's Motion for an Order to Show Cause [Entry #212]; (11) Plaintiff's Motion for Return of Savings [Entry #217]; and (12) Plaintiff's Motion for a Ruling [Entry #220].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because some of the motions are dispositive motions, this report and recommendation is submitted for the district judge's consideration.

I.    Factual and Procedural Background

A.    Plaintiff's Allegations

Plaintiff's complaint concerns allegations regarding his time spent at TRCI. Plaintiff alleges Defendants have been deliberately indifferent to his serious medical needs. *See generally* Compl. [Entry #1]. Specifically, Plaintiff alleges his nasal passages

---

[1] Dr. Beinor is incorrectly identified in the complaint as Dr. Beiner.

2

have been blocked for ten years while he has been in Defendants' custody. *Id.* at 4–10. He alleges that his condition can cause death from lack of oxygen. *Id.* SCDC permitted him to participate in a sleep study and Plaintiff claims the results were "abnormal." *Id.* Plaintiff claims he awakes at night gasping for air, but that Defendants informed him treatment for his condition is elective and failed to provide him with a recommended breathing machine and surgery. *Id.*

Plaintiff also complains that he has been subjected to unsafe work conditions while employed with Anderson & Shaw Hardwood Flooring, Inc. ("Anderson & Shaw") through the Prison Industries Enterprise program ("PIE"), including violations of OSHA standards and failure to provide him with a back brace or proper footwear. Compl. at 19–24. He also sues for breach of contract because he was terminated from his position with Anderson & Shaw. *Id.* at 15. Additionally, Plaintiff further alleges that the South Carolina Department of Probation, Parole, and Pardon Services ("DPPPS") has unlawfully garnished the wages he earned in the PIE program to go towards his orders for restitution. *Id.* at 28–29. Plaintiff claims the orders against him for restitution have converted to civil judgments and DPPPS has no authority to garnish his wages to pay the civil judgments. *Id.*

Plaintiff filed an amended complaint on August 10, 2009. [Entry #22]. In his amended complaint, Plaintiff alleges claims of false imprisonment, contempt of court, and violation of the Fourteenth Amendment for SCDC's failure to remand him to federal custody to serve his concurrent federal and state sentences. *Id.*

B.     Plaintiff's Charges, Custody, and Restitution Orders

Plaintiff is serving concurrent state and federal sentences in the custody of the BOP. Because Plaintiff alleges he was improperly placed in SCDC custody, an overview of Plaintiff's criminal history is pertinent.

On June 25, 2001, Plaintiff was convicted of breaking into a motor vehicle and possession of a stolen vehicle in Richland County. [Entry #160-2 at 8]. Plaintiff was sentenced to five years in the custody of the SCDC, but the sentence was suspended to forty eight days, with two years' probation ("First Sentence"). *Id.* The court also ordered that Plaintiff pay $695.00 as restitution. *Id.* Plaintiff's suspended sentence was revoked on April 5, 2002, and he was ordered to serve the full five-year sentence ("Second Sentence"). *Id.* at 11. On April 5, 2002, Plaintiff's restitution order was converted to a civil judgment. *Id.*

On February 28, 2003, while serving the Second Sentence, Plaintiff was convicted in Spartanburg County of one count of possession of a stolen vehicle, two counts of malicious injury to personal property, five counts of grand larceny, seven counts of petit larceny, and ten counts of breaking into a motor vehicle. [Entry #160-2 at 13–37]. The Spartanburg County Court of General Sessions sentenced Plaintiff to five years for each count of breaking into a motor vehicle and on two counts of petit larceny (Indictments 03-GS-42-1189 and 03-GS-42-1045). *Id.* Plaintiff was sentenced to ten years on each count of possession of a stolen vehicle, malicious injury to personal property, and grand larceny, as well as five counts of petit larceny ("Third Sentence"). *Id.* The court ordered

4

the Third Sentence to run concurrently, but suspended the Third Sentence and ordered Plaintiff to serve five years of probation beginning on his release from prison on the Second Sentence. *Id*. Plaintiff was also ordered to pay $26,378.51 as restitution. *Id*. at 38–40.

Plaintiff was arrested in Richland County on March 16, 2006 on charges of second degree burglary, petit larceny, breaking into a motor vehicle, grand larceny and first degree burglary. [Entry #22-2]. On October 24, 2006, as he was awaiting trial in Richland County, Plaintiff was convicted of being a felon in possession of a firearm in this court. [Entry #22-1]. On January 3, 2007, this court sentenced Plaintiff to 200 months in federal custody ("Federal Sentence"). *Id*.

Thereafter, on January 16, 2007, Plaintiff filed a Notice of Motion to Reduce Bond in the Richland County Court of General Sessions and requested that his upcoming state sentence ("Fourth Sentence") be served concurrently with his Federal Sentence. [Entry #22-2]. A bond hearing was held on January 24, 2007. The Richland County Court of General Sessions ordered that Plaintiff's bond be set in the amount of $25,000 and that Plaintiff be remanded into federal custody. [Entry #22-2]. That order was signed at 2:45 p.m. on January 24, 2007. *Id*. Later on the afternoon of January 24, 2007, Plaintiff pled guilty to two counts of second degree burglary and one count of breaking into a motor vehicle in the Richland County Court of General Sessions. [Entry #160-2 at 43–45]. Plaintiff was sentenced to five years for breaking into a motor vehicle and fifteen years for each count of second degree burglary, making his Fourth Sentence final. *Id*. That

5

court ordered that Plaintiff's Federal Sentence and Fourth Sentence run concurrently. *Id.* The sentencing sheets signed by the judge at 3:15 p.m. indicate Plaintiff was to be placed in the custody of the SCDC. *Id.*

The SCDC took custody of Plaintiff again on January 30, 2007 to serve the Fourth Sentence. [Entry #22 at 6]. From January 30, 2007 to March 13, 2007, Plaintiff was incarcerated at Kirkland Correctional Institution. [Entry #160-2 at ¶ 8]. Plaintiff was transferred to Tyger River Correctional Institution on March 13, 2007. *Id.*

On July 27, 2007, Plaintiff's Third Sentence was revoked by the Spartanburg County Court of General Sessions and Plaintiff was ordered to serve the full ten year sentence. [Entry #160-2 at 54]. The Spartanburg Court ordered that Plaintiff's Third Sentence run concurrently with his Federal Sentence. *Id.* On July 27, 2007, Plaintiff's February 28, 2003 restitution order was converted to a civil judgment. *Id.* On October 1, 2007, Plaintiff was convicted in the Lexington County Court of General Sessions of one count of breaking into a motor vehicle, three counts of grand larceny, and three counts of second degree burglary. [Entry #160-2 at 74–80]. Plaintiff received a five year sentence for breaking into a motor vehicle, five year sentences on each count of grand larceny, and fifteen year sentences on each count of second degree burglary ("Fifth Sentence"). *Id.* The Lexington Court ordered that Plaintiff's Fifth Sentence run concurrently. *Id.*

On August 26, 2008, Plaintiff was convicted of one count of first degree burglary, one count of second degree burglary, and two counts of grand larceny in the Spartanburg County Court of General Sessions. [Entry #160-2 at 82–85]. Plaintiff was sentenced to

6

fifteen years for each of the burglary charges and five years for each count of grand larceny ("Sixth Sentence"). *Id.* The Spartanburg Court ordered that the sentences run concurrently with Plaintiff's Federal Sentence. *Id.*

At the time this action was filed, Plaintiff was confined at TRCI. Plaintiff was transferred into federal custody on September 2, 2009.

C.      Identification of Defendants

Jon Ozmint is the Director of SCDC. Ozmint's duties include management of SCDC and all properties belonging to SCDC.  S.C. Code Ann. § 24-1-130.

Glover is responsible for management of DPPPS. S.C. Code Ann. § 24-21-13. DPPPS is a state agency charged with supervising criminal offenders placed on probation by a court or paroled by the State Board of Paroles and Pardons. S.C. Code Ann. § 24-21-10 *et seq.* DPPPS also collects court-ordered restitution payments from criminal offenders whose sentences require probation. S.C. Code Ann. § 24-21-490(A). DPPPS collects restitution payments directly from offenders or inmate wages garnished by SCDC. *Id.* DPPPS remits restitution payments to crime victims. *Id.*; S.C. Code Ann. § 17-25-322(C).

Dr. Beinor is Director of SCDC Health Services and approved Plaintiff's sleep study and the therapeutic trial of a continuous positive airway pressure ("CPAP") machine for Plaintiff.

John Carson is the Manager of the PIE at TRCI. Carson Aff. ¶ 1 [Entry #160-4]. Carson is responsible for on-the-job supervision and management of participants in the PIE program at TRCI. *Id.* at ¶ 2.

Anderson & Shaw Hardwood Flooring, Inc. is a participant in the PIE program and employed Plaintiff as part of the program.

Leon Lott is the Sheriff of Richland County.    The Alvin S. Glenn Detention Center is a jail in Richland County.

Bernard McKie is the Warden of Kirkland Reception and Evaluation Center. McKie Aff. ¶ 1 [Entry #160-5]. McKie is responsible for managing the operations of Kirkland. *Id.* at ¶ 2.

Monica Wallace is an SCDC Program Coordinator for State Classification and is assigned to SCDC's Headquarters in Columbia. Wallace Aff. ¶¶ 1–2 [Entry #160-6]. Contrary to Plaintiff's assertions, Wallace testifies that she has never been assigned to work at Kirkland Reception and Evaluation Center. *Id.* at ¶ 3. Wallace is responsible for reviewing and classifying inmates, assigning inmates to specific SCDC institutions, and screening labor crew work programs. *Id.* at ¶ 4.

Tim Riley is the Warden of TRCI. Riley Aff. ¶ 1 [Entry #160-7]. Riley is responsible for managing the operations of TRCI. *Id.* at ¶ 2.

Rogers Rabb is a Case Manager at TRCI. Rabb Aff. ¶ 1 [Entry #160-8]. Rabb is responsible for supervising case workers at TRCI. *Id.* at ¶ 2.

Laura Caldwell is the Associate Warden for Programs at TRCI. Caldwell Aff. ¶ 1 [Entry #160-9]. Caldwell is responsible for institutional supervision of the basic operations of the medical, prison industries, food service, chaplaincy, educational and recreational programs at TRCI. *Id.* at ¶ 2.

Gary Lane is the Associate Warden of Operations at TRCI. Gary Lane Aff. ¶ 1 [Entry #160-10]. Lane is responsible for supervising security, transportation, classification, and maintenance programs at TRCI. *Id.* at ¶ 2.

Donald Lane is an SCDC Investigator. Donald Lane Aff. ¶ 1 [Entry #160-11]. Donald Lane is responsible for investigating administrative and criminal activities within SCDC institutions. *Id.* at ¶ 2.

D.    Procedural History

Plaintiff filed his complaint in this action on July 1, 2009 and filed an amended complaint on August 10, 2009. Defendants, with the exception of Anderson & Shaw, filed motions for summary judgment on March 18, 2010 and March 23, 2010. [Entry #152, #160, #161, #162]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #156, #164]. Plaintiff filed responses in opposition to Defendants' motions on April 7, 2010. [Entry #177, #184, #185]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motions for summary judgment be granted.

II.    Discussion

A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a

10

potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

      B.     Analysis of Summary Judgment Motions[2]

          1.     Deliberate Indifference to Plaintiff's Serious Medical Needs

Plaintiff claims Defendants have been deliberately indifferent to his serious medical needs. Specifically, Plaintiff claims that he suffers from dyspnea, a condition that causes difficulty breathing. Plaintiff complains that he was not provided a sleep study early enough. In addition, Plaintiff complains that he was not provided with a breathing machine or a recommended surgery.

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in

---

[2] Because the claims and defenses against all Defendants overlap, as do the arguments contained in the motions for summary judgment, the undersigned has analyzed the issues by claims, as opposed to individual motions, to avoid any redundancy.

> intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted).   Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

In *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).  Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994).

Here, a review of Plaintiff's medical records reveals that he has not stated and cannot sustain a claim of constitutional magnitude. Contrary to Plaintiff's allegations, the records reflects he was provided treatment by not only the medical staff of the SCDC, but by outside resources and physicians. Plaintiff has a long history of chronic nasal congestion. According to the medical records, on July 3, 2008, Plaintiff was transported to Tuomey Regional Medical Center in Sumter for evaluation by an ear, nose, and throat specialist. *See, e.g.*, Beinor Aff. and Medical Records [Entry #152-2]. The specialist recommended that Plaintiff be treated with Singulair and Nasonex to alleviate nasal congestion. *Id.* On November 7, 2008, Plaintiff was again evaluated during a follow-up visit to the ear, nose, and throat specialist. *Id.* at 8. The report from this visit indicated that Plaintiff could be suffering from obstructive sleep apnea and recommended that Plaintiff undergo a sleep study. *Id.*

On January 30, 2009, after receipt and review of Plaintiff' medical records, Defendant approved Plaintiff's request for a sleep study. Beinor Aff., ¶ 5 [Entry #152-2]. On April 13, 2009, Plaintiff was taken to Palmetto Richland Memorial Hospital for a sleep study, which was performed by Dr. James A. Barker. *See* Beinor Aff. and Medical Records [Entry #152-2 at 5]. Dr. Barker opined that Plaintiff suffered from "moderate to severe obstructive apnea" and suggested that Plaintiff be given a therapeutic trial of a CPAP machine. *Id.* Dr. Barker did not recommend that Plaintiff undergo surgery. On May 12, 2009, after reviewing Dr. Barker's report, Defendant approved his suggestion that Plaintiff receive a CPAP machine. *Id.* According to Beinor, because no emergency was present,

13

there were delays in receiving the requested medical device. Beinor Aff., ¶ 10 [Entry #152-2]. Plaintiff left the custody of the SCDC prior to receiving the CPAP machine, even though it had arrived at SCDC headquarters and Plaintiff was awaiting transport to the SCDC's specialty clinic to be trained on its proper use. Plaintiff has not shown how such treatment constituted deliberate indifference to his serious medical needs.

Additionally, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Here, Plaintiff only claims that Defendants cannot claim they did not know, because there were medical records recording his trouble breathing for ten years. Plaintiff has not alleged that any other Defendants were personally involved in the alleged denial of medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized misconduct by prison physicians.

Therefore, based on the record before the court, Plaintiff has failed to set forth any facts through affidavit, medical records, or other evidence to support his allegation that Defendants acted with deliberate indifference to his serious medical needs. Therefore, Plaintiff has not demonstrated an actionable claim under § 1983 regarding his medical

14

treatment and Defendants are entitled to summary judgment on Plaintiff's claim for medical indifference.

2.      Garnishment of Plaintiff's Wages by DPPPS and the SCDC

Plaintiff complains that the DPPPS and the SCDC have unlawfully garnished his wages earned through the PIE program, despite the conversion of his orders of restitution to civil judgments.   Defendants agree that Plaintiff's orders regarding restitution have been converted to civil judgments, but argue that such conversions do not affect their responsibility to collect on the same.

An offender's account with the DPPPS reflects the total restitution ordered, the amount of each payment, and the balance due. S.C. Code Ann. § 24-21-490(B). The balance includes a statutorily-mandated collection fee, which is equal to twenty percent of the total amount of each restitution order entered. *Id.* The collection fee is automatically added to the total amount of restitution owed and is collected along with the offender's payments. *Id.*

The sentencing court retains jurisdiction over the manner in which restitution is made until the order is satisfied in full. S.C. Code Ann. § 17-25-323(A). If an offender fails to make payment, a court may convert the restitution to a civil judgment. S.C. Code Ann. § 17-25-323(B). Once a restitution order is so converted, the civil judgment carries the same effect as a final judgment and may be enforced in the same manner. S.C. Code Ann. § 17-25-323(C)-(D).

Plaintiff had been ordered to pay restitution by the Richland County Court and Spartanburg County Court in the amounts of $695.00 and $26,378.51 respectively. [Entry #160-2 at 8 and 38–40]. Accordingly, twenty percent of Plaintiff's PIE wages were

garnished by SCDC to pay these outstanding restitution obligations. S.C. Code Ann. § 24-3-40(A)(1). Plaintiff agreed to those garnishments when he signed his Prison Industries Inmate Agreement on January 24, 2008. [Entry #1-8]. DPPPS was responsible for collecting Plaintiff's restitution from SCDC because Plaintiff's sentences carried terms of probation. Demoya Aff. ¶ 3, [Entry #160-3]. The DPPPS' statutorily-required twenty percent collection fee resulted in balances of $834.00 and $31,654.21 respectively. *Id.* at ¶ 11. Between April 2008 and September 2008, DPPPS received checks from SCDC that were remitted to Plaintiff's victims in Spartanburg and Richland Counties. *Id.* at ¶ 12.

Although Plaintiff claims that after conversion of a restitution order to a civil judgment, the victim is required to file suit to recover, Plaintiff cites no law for this claim. When an offender defaults on his restitution obligation, the trial court retains jurisdiction to place a judgment lien on the offender's future earnings and may authorize DPPPS to enforce the judgment as a judgment creditor. S.C. Code Ann. § 17-25-323(B)-(D). The conversion of a restitution order to a civil judgment has no effect on an offender's obligation to pay restitution unless a court orders otherwise. *See* S.C. Code Ann. § 17-25-323. Therefore, it is recommended that Defendants be granted summary judgment on Plaintiff's claims with regard to the garnishment of his wages.

3.     Plaintiff's Termination from his PIE Job

Plaintiff complains that he was terminated from his PIE job with Anderson & Shaw for no reason.   Defendants contend that Plaintiff was unable to meet his production requirements, as he missed work to attend court.   Plaintiff appears to believe that court

appearances should be excused, but provides no caselaw or documentation to support this argument.  In fact, Plaintiff's signed employment contract states "I understand that I may be terminated by the [SCDC] for security, safety or custody reasons, failure to meet established production and quality standards, failure to maintain a cooperative attitude, and failure to adhere to the policies, procedures, and conduct requirements of the [SCDC]." [Entry #1-7]. Plaintiff does not dispute failing to meet his production requirements while absent from work.  Therefore, it is recommended that Defendants be granted summary judgment on Plaintiff's claim for breach of contract due to his termination.

4.     Hazardous Conditions in the PIE program

Defendants claims that Plaintiff has failed to exhaust his administrative remedies with regard to the working conditions in the PIE program.  Plaintiff has presented no evidence that he filed any grievances with regard to his working conditions. Plaintiff only alleges he filed a grievance with regard to his termination—well after he was exposed to the conditions he now complains of—and was informed that job assignments were non-grievable.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  To satisfy this requirement, a plaintiff

must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quotation omitted) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

It is undisputed that Plaintiff failed to exhaust his administrative remedies with regard to the allegedly hazardous working conditions in the PIE program. Therefore, it is recommended that Defendants be granted summary judgment on this claim.

     5.     Allegations over Proper Custody

Plaintiff alleges that he was improperly in the custody of the SCDC or the Alvin S. Glenn Detention Center since January 24, 2007. Plaintiff bases this claim on an order amending his bond, which indicated Plaintiff should be remanded into federal custody. [Entry #22-2]. That order was signed at 2:45 p.m. on January 24, 2007. *Id.* Later in the afternoon of January 24, 2007, Plaintiff pled guilty to two counts of second degree burglary and one count of breaking into a motor vehicle in the Richland County Court of General Sessions. [Entry #160-2 at 43–45]. Plaintiff was sentenced to five years for breaking into a motor vehicle and fifteen years for each count of second degree burglary. *Id.* The court ordered that Plaintiff's sentences run concurrently. *Id.* The sentencing sheets signed by the judge at 3:15 p.m. indicate Plaintiff was to be placed in the custody of the SCDC. *Id.* Therefore, the statement in the order amending bond regarding remanding Plaintiff to federal custody appears to have been superseded by Plaintiff's subsequent pleas and sentencing on the same day. For these reasons, Plaintiff's custody in the SCDC did not violate Plaintiff's constitutional rights or constitute false imprisonment or contempt of court. Therefore, it is recommended that Defendants be granted summary judgment on this claim.

C.    Anderson & Shaw Hardwood Flooring, Inc.

On August 6, 2010, the undersigned entered a Report and Recommendation ("Report") in this action, recommending the district judge direct the clerk of court to enter default against defendant Anderson & Shaw. The Report also noted that because the complaint failed to distinguish between Defendants as to liability for the claims alleged in the complaint, the proper path was to await a final ruling on the merits as to the remaining Defendants, instead of entering a default judgment. [Entry #191]. The Honorable Terry L. Wooten accepted the undersigned's prior Report and Recommendation on September 21, 2010. [Entry #200]. In light of the recommendation contained herein on Plaintiff's claims, it is recommended that Plaintiff's claims against Anderson & Shaw be dismissed for failing to set forth a cause of action under § 1983.[3]  To the extent that Plaintiff's complaint contains state law causes of action against Anderson & Shaw, the undersigned recommends the district judge decline to exercise jurisdiction over those claims pursuant to 28 U.S.C. § 1367(c)(3).

III.    Conclusion

For the foregoing reasons, it is recommended that the following motions be granted: (1) Dr. Beinor's Motion for Summary Judgment [Entry #152]; (2) Defendants Glover, Ozmint, Carson, McKie, Wallace, Rabb, Riley, Caldwell, Gary Lane, and Donald Lane's Motion for Summary Judgment [Entry #160]; (3) Defendant Lott's Motion for Summary

---

[3]  In addition to the reasons previously set forth herein regarding why Plaintiff's § 1983 claims are insufficient, the undersigned notes that there is no allegation of proof that Anderson & Shaw is a state actor for § 1983 purposes.

20

Judgment [Entry #161]; and (4) the Director of the Alvin S. Glenn Detention Center's Motion for Summary Judgment [Entry #162]. In addition, the undersigned recommends Plaintiff's claims against Anderson & Shaw be dismissed. If the district judge accepts these recommendations, all other pending motions will be rendered moot.

    IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 26, 2011                Shiva V. Hodges
Florence, South Carolina        United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**